## Thacker et al. v. Coleman et al.

(Decided May 26, 1931.)

L. J. MAY for appellants.

O. M. GOFF for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Marion Coleman died a resident of Pike county on May 25, 1927, survived by his widow, Mary J. Coleman, and three sons, N. M. Coleman, Josh Coleman, and J. A. Coleman, and two daughters, Frankie Thacker and Ida Coleman. On March 10, 1927, Marion Coleman executed a will by which he bequeathed to his two sons N. M. Coleman and Josh Coleman a saw and grist mill, two shares of stock in the Pikeville National Bank, and $200 which he had on interest in that bank. The devisees were

to have the money in case the testator did not use it. On March 12, 1927, Marion Coleman and wife conveyed to each of the sons a portion of the farm which he owned. The consideration for each of the deeds was the payment on the death of first parties of $200 to Frankie Thacker and Ida Coleman. In each of the deeds the grantors retained possession and control of the land during their lives. In September, 1930, Frankie Thacker and Ida Coleman brought suit against their brothers to set aside the deeds and will on the ground of fraud, mental incapacity, and undue influence. On final hearing their petition was dismissed, and they appeal.

At the time of the transactions in question the three boys were living on the farm with their father. N. M. Coleman and Josh Coleman owned an interest in the farm and a one-third interest each in the mill. Their father was a great sufferer from rheumatic gout. Sometimes when an attack came on he became flighty and said and did foolish things, but the weight of the evidence is to the effect that at other times his mind was clear, and that he knew and understood what he was doing and what he wanted done. Mrs. Coleman and the boys, and the deputy clerk, Jonathan Coleman, who drafted the instruments, all say that his mind was clear. Jonathan Coleman further testified that Marion Coleman went into details and told him how to write the deeds and will. Frankie Thacker testified that she was present the day the deeds were made, and that her father did not know her, but called her "Malinda." She was not allowed in the room where the deeds were being written. When she and her sister went to the door, Josh told them to go right on through. At that time she did not know what was being done. Uncle Jonathan said he could not do business with a whole house full in there. Before that day she had seen her father, and his mind was bad. He would have crawled into the fire if they had allowed him. He was not allowed to keep a pocketknife because they were afraid he would hurt himself. On cross-examination she stated that the two older boys built the house. The two older boys and her father worked in the crosstie business, and bought another tract of land. A wire fence was put around the farm. The two older boys owned one-third apiece in the sawmill, and her father owned the other third. Ida Coleman did not think the condition of her father's mind before and after the deeds were made was real good. They never let the girls know that the deeds were made until after they were made.

She and her sister were not allowed in the rooms while they were preparing the deeds. On the day the deeds were made she saw her father going up to the mill. On the other hand, Jonathan Coleman, the draftsman, says that nobody told the girls to keep out of the room, but he suggested it himself, as there was a big crowd there and he did not want to be bothered. There was further evidence that the boys looked after and took care of their father, and that they spent a considerable sum of money in medicine, doctors' bills, and the like.

Appellant insists that because of the confidential relationship between her brothers and her father, and the fact that they were living together at the time of the transactions complained of, the burden was on them to show that the transactions were freely and voluntarily entered into by the grantor, and were devoid of inequitable incidents. We think the evidence sustains the conclusion of the chancellor that Marion Coleman's mind was clear, that he fully understood and appreciated the nature and effect of the transactions, and that in executing the instruments he did exactly what he wanted to do. Not only so, but, when the transactions are analyzed in the light of the attendant circumstances, they do not appear to be unjust or inequitable. The father did not overlook the girls who had left home several years before. He provided that they should receive $300 each, and secured these sums by a lien on the land conveyed to his sons. The two older sons already owned an interest in the land conveyed, as well as a two-thirds interest in the sawmill. The sons had built a house on the land, and other improvements. They stayed at home, bore the burden of looking after their father, and spent considerable money in supplying his wants. While they will receive more than their sisters, the excess is no more than a fair recognition of their contributions to their father's comfort and their services in increasing the value of his estate.

Judgment affirmed.